trays at the time of the trial, as testified to by the plaintiffs upon the trial. This was not the correct measure of damage. The vendor, upon the breach of an executory contract of sale, may store the property for the buyer and sue for the purchase price, or may sell the property as agent for the vendee and recover any deficiency resulting, or he may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery. The plaintiffs apparently proceeded upon the theory of keeping the property as their own and recovering the difference between the contract price and the market price at the time and place of delivery; but the time of delivery was on or before September 21, 1907, while the trial took place on December 24, 1907, more than two months after the time of the delivery as stated in the contract, and for all that appears to the contrary the market price may have changed in this interval. The interests of justice seem to require a new trial of this case.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

---

CITY OF NEW YORK v. UNION RY. CO.

(Supreme Court, Appellate Division, First Department. May 15, 1908.)

1. STREET RAILROADS—REGULATION—LICENSES AND TAXES—COMPENSATION FOR USE OF STREETS—ACTION FOR COMPENSATION—SUFFICIENCY OF COMPLAINT.

Laws 1863, p. 604, c. 361, § 6, authorizing the construction of street railways in certain towns, was amended by Laws 1892, p. 703, c. 340, so as to allow the corporation formed under that act to consolidate with any street surface railroad then or thereafter to be incorporated in certain towns, and defendant corporation was formed by such consolidation. Section 2, p. 705, of the amended act, required all the duties imposed on the company so incorporating to be assumed by defendant. By section 3 certain provisions of General Railroad Act, Laws 1890, p. 979, c. 555, were not to be applied to defendant. By section 4 defendant was required to make a verified statement to the comptroller of the city of New York annually by September 1st of its gross receipts for the year ending June 30th preceding, and a detailed statement of daily earnings for that period, and that whenever such earnings should "during any period of six months exceed an average of $1,700 per day" defendant should thereafter annually pay into the treasury of the city a sum equal in the aggregate to 1 per cent. of its gross earnings, and an additional payment of 1 per cent. thereof for each multiple of $1,700 per day of such average gross earnings; such payments to be in lieu of all other percentages which any of the roads were theretofore liable to pay on its receipts. In an action by the city to collect an amount due under the statute, the complaint alleged that defendant's gross earnings for the six months from March 1, 1903, to August 31, 1903, amounted to a certain sum. which made an average of $3,400 daily during that six months, and that the gross earnings from March 1, 1903, to June 30, 1904, amounted to $1,710,759, and there was therefore due to plaintiff from defendant 2 per cent. of that sum to which defendant demurred on the ground that the statute only required that, if during any six months wholly within one fiscal year from June 30th, the daily receipts aggregated $3,400, defendant should pay 2 per cent. of its earnings, and, as there was no allegation of that fact, the complaint was defective. *Held*, that the purpose of the statute was to relieve defendant from payment until its road was constructed and it could afford to pay the amount imposed, and its obligation to pay that amount arose when its earnings during any six months exceeded the

sum stated, and continued irrespective of its subsequent earnings, and hence the complaint stated a good cause of action.

**2. SAME—NATURE OF CHARGE.**

The obligation imposed by Laws 1892, p. 705, c. 340, § 4, was not a tax on defendant or its property, but a charge for the use of the streets by the consolidated company, and in lieu of all other charges theretofore imposed on the constituent companies.

Appeal from Special Term.

Action by the city of New York against the Union Railway Company. From a judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Joseph P. Cotton, for appellant.
Terence Farley, for respondent.

INGRAHAM, J.  The question presented on this appeal arises under section 4, c. 340, p. 705, of the Laws of 1892. By that act, section 6, c. 361, p. 604, of the Laws of 1863, "An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania," was amended so as to allow the corporation formed under that act to consolidate its capital stock and property with the capital stock and property of any street surface railroad company incorporated or to be thereafter incorporated for the purpose of building or operating any street surface railroad north or east of the Harlem river, in the city of New York or the county of Westchester. The name of the corporation formed by such consolidation was to be the Union Railway Company of New York City. By section 2 of the act all conditions, obligations, and liabilities imposed by law or contract upon any railroad company or person so consolidating were preserved unimpaired, and were to be assumed, borne, and performed by the said Union Railway Company. By section 3 certain provisions of the general railroad act (chapter 555, p. 979, of the Laws of 1890) were not to be applied to the Union Railway Company. By section 4 the president and treasurer of the Union Railway Company were required to annually make a verified statement to the comptroller of the city of New York, on or before the 1st day of September in each year—

"of the gross amount of its receipts for the year ending June 30th next preceding, and also a detailed account of its daily earnings during that period. * * * Whenever such earnings shall, during any period of six months, exceed an average of seventeen hundred dollars per day, then, and in that event, the said company shall thereafter annually, on the 1st day of December, pay into the treasury of the city of New York to the credit of the sinking fund of the said city a sum equaling in the aggregate 1 per cent. of its gross earnings; and an additional annual payment of 1 per cent. of such gross earnings shall be made by said company in like manner for each multiple of seventeen hundred dollars per day of such average gross earnings. * * * The payment of the percentage of gross receipts herein provided for shall be in lieu of all other percentages which any of the roads consolidating and forming the said Union Railway Company may theretofore be liable to pay on its receipts."

The complaint alleges that "the gross earnings of defendant for the six months beginning March 1, 1903, and ending August 31, 1903,

amounted to the sum of $630,850.34, or an average of more than $3,400 daily during said period of six months; that the gross earnings of defendant from March 1, 1903, to June 30, 1904, amounted to the sum of $1,710,759.09"; and that there therefore became due and owing to the plaintiff from the defendant 2 per cent. on said amount, aggregating $34,215.18, of which the defendant had paid the sum of $17,107.59, for the balance of which the plaintiff demanded judgment. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and, that demurrer having been overruled, the defendant appealed.

The defendant seeks to sustain its construction of this provision of the statute by a contention that it imposes a tax on the defendant or its property. But it is clear that this construction cannot be sustained. It is a charge for the use of the streets and avenues by the consolidated company, and in lieu of all charges which had been imposed upon or accepted by the constituent companies. The defendant then contends that the true interpretation of this provision of its charter is that, if during any six months period wholly within any one fiscal year from June 30th to June 30th the daily receipts averaged $3,400, then for that particular fiscal year the company must pay a tax of 2 per cent. upon its gross earnings, and, as there was no allegation that for any six months within any fiscal year extending from June 30th to June 30th the average gross earnings were $3,400 per day, the complaint set forth no cause of action. The sole question presented is as to the construction of section 4 of defendant's charter. The defendant is required to render a verified statement to the comptroller of its receipts for each year ending June 30th, and a detailed account of its daily earnings during that period. Thus the plaintiff was to be in possession of a detailed account of the gross amount of the defendant's receipts from year to year. This obligation was a continuing one, so by comparing these annual statements the average earnings of the defendant for any six months could be ascertained. The statute then provided:

"Whenever such earnings shall, during any period of six months, exceed an average of seventeen hundred dollars per day, then, and in that event, the said company shall thereafter annually, on the 1st day of December, pay into the treasury of the city of New York to the credit of the sinking fund of the said city a sum equaling in the aggregate 1 per cent. of its gross earnings."

There was nothing in this statute which indicates that the obligation to pay should not arise until the company should have received for six months of any fiscal year an average of $1,700 per day, but "whenever such earnings shall, during any period of six months, exceed an average of seventeen hundred dollars per day," there was imposed upon the defendant the obligations to pay to the city of New York 1 per cent. of its gross earnings. The obvious intent was to relieve the defendant from this payment until its road had been constructed and was in operation, and its earnings were such that it could afford to pay for the use of its franchise and the right to use the streets, and this obligation was to arise when the earnings should "during any period of six months, exceed an average of seventeen

hundred dollars per day." Thereafter the defendant was bound to pay a percentage of its gross earnings to the city, regardless of its actual earnings. The provision requiring the defendant to make a verified statement to the comptroller was, first, to determine when there had been a period for six months during which the company had actually earned $1,700 per day, and then to provide the means of ascertaining the amount of the payments to be thereafter made to the defendant. The provision as to the making of this annual statement and the imposition of the obligation upon the defendant were not connected, and the obligation of the defendant would arise, whether the defendant had complied with its obligation to furnish a statement or not. The obligation to pay was not at all dependent upon the actual furnishing of the statement or what appeared therefrom. The defendant was bound to make the statement to the city, and it was also bound to make the payments whenever the gross earnings should, during any period of six months, exceed an average of $1,700 per day, and the obligation to pay, therefore, arose as soon as the railroad had received as its gross earnings for any period of six months an average of $1,700 per day. I think, therefore, the obligation to pay arose when for any period of six months the defendant's gross earnings exceeded the daily average of $1,700 per day, and that the complaint sets forth a good cause of action.

It follows that the judgment appealed from must be affirmed, with costs, with leave to the defendant to withdraw the demurrer and to answer the complaint on payment of costs in this court and in the court below. All concur.